```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF GEORGIA
                    COLUMBUS DIVISION
```

UNITED STATES OF AMERICA, for     *
the use and benefit of
CLEVELAND CONSTRUCTION, INC.,     *

    Plaintiff,              *

vs.                               *       CASE NO. 4:16-CV-179 (CDL)

STELLAR GROUP, INC. and LIBERTY   *
MUTUAL INSURANCE COMPANY,
                                  *
    Defendants.
                                  *

O R D E R

This action arises from a delayed construction project on Fort Benning. The prime contractor on the project, Stellar Group, Inc. ("Stellar"), subcontracted with Cleveland Construction, Inc. ("Cleveland") to provide certain construction services. After completion of the project, Cleveland brought this breach of contract and Miller Act suit against Stellar and Stellar's surety, Liberty Mutual Insurance Company ("Liberty"), for damages arising from the delay. Stellar brought counterclaims for breach of contract against Cleveland.

The majority of the parties' claims proceeded to trial. *See generally* Order (Feb. 28, 2018), ECF No. 84 (granting in part and denying in part Cleveland's motion for partial summary judgment and denying Stellar's motion for partial summary judgment). The parties stipulated that they would present their claims for damages

against each other through expert testimony. Through its expert, Cleveland brought the following claims against Stellar: (1) additional direct labor and material claim for $2,964,800; (2) extended general conditions claim for $395,381; (3) pending cost proposals $78,848; and (4) outstanding Subcontract balance claim for $917,512. Therefore, Cleveland sought total damages against Stellar of $4,356,541. *See* Trial Ex. P-345-053, Pattillo Report § 13.1, ECF No. 181-4 at 53. Stellar brought the following counterclaims against Cleveland: (1) change order costs for $947,498.88; (2) added supervision costs for $1,610,106.95; (3) extended general conditions for $1,353,119.04; and (4) liquidated damages for $542,803.52. Stellar thus sought total damages from Cleveland of $4,453,528.39, less the retained Subcontract balance of $917,511.71. *See* Trial Ex. D-259-001, Stellar Damages Summary, ECF No. 165-2.

The Court prepared a general verdict form that did not differentiate between the types of claims brought by each party. Neither party objected to the verdict form. The jury awarded $2,481,060 to Cleveland, but concluded Liberty was not jointly liable for any of this amount. Verdict 1, ECF No. 141. The jury also awarded $1,300,000 to Stellar. *Id*. at 2. Based on the parties' setoff stipulation, the clerk entered judgment in favor of Cleveland in the amount of $1,181,060. Judgment (Oct. 26, 2018), ECF No. 145.

The parties stipulated that any issues presented by motions for attorneys' fees would be decided by the Court. The following post-trial motions are now pending: (1) Stellar's motion for attorneys' fees (ECF No. 167); (2) Cleveland's motion for attorneys' fees (ECF No. 177); and (3) Cleveland's motion to alter the judgment to add pre-judgment interest (ECF No. 197). For the following reasons, the Court denies Stellar's motion for fees without prejudice, denies Cleveland's motion for fees, and reserves ruling on Cleveland's motion to alter the judgment.

**I.   Stellar's Motion for Attorneys' Fees (ECF No. 167)**

Stellar relies on a fee-shifting provision in the Subcontract to support its claim for fees. "Federal courts apply state law when ruling on the interpretation of contractual attorney fee provisions." *In re Sure-Snap Corp.*, 983 F.2d 1015, 1017 (11th Cir. 1993). Therefore, the Court applies Georgia law to analyze Stellar's claim for fees.[1]  Under Georgia law, "a party's

---

[1] Based on a choice of law provision in the Subcontract, the Court previously explained that "to the extent that federal common law exists regarding the legal issues presented, then that law shall apply." *See* Order 4 (Sept. 28, 2018), ECF No. 107. Cleveland (the party seeking application of federal common law) pointed to no such law contravening the established principle regarding application of state law in this context. Further, Cleveland did not identify any federal common law discussing enforceability of contractual attorneys' fees provisions. Instead, Cleveland cited to Federal Circuit cases outside the attorneys' fees context for the general principle that courts should interpret contracts to avoid surplusage. *See, e.g.*, *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004). Georgia courts also recognize this well-established interpretive principle. *See, e.g.*, *Horwitz v. Weil*, 569 S.E.2d 515, 516 (Ga. 2002) ("The contract is to be considered as a whole, and each provision is to be given effect and interpreted so as to harmonize with the others." (quoting *Ga. Farm Bureau*

entitlement to attorney fees under a contractual provision is determined by the usual rules of contract interpretation." *Benchmark Builders, Inc. v. Schultz*, 711 S.E.2d 639, 640 (Ga. 2011) (quoting John K. Larkins, Jr., Ga. Contracts Law & Litigation § 12-29(a)). "The construction of contracts involves three steps." *Gibson v. Decatur Fed. Sav. & Loan Ass'n*, 508 S.E.2d 788, 791 (Ga. Ct. App. 1998) (quoting *CareAmerica v. S. Care Corp.*, 494 S.E.2d 720, 722 (Ga. Ct. App. 1997)). First, the Court must consider whether the language is "clear and unambiguous." *Id.* (quoting *CareAmerica*, 494 S.E.2d at 722). "If it is, the court simply enforces the contract according to its clear terms." *Id.* (quoting *CareAmerica*, 494 S.E.2d at 722). If, however, the contract is ambiguous in some respect, the Court must then "apply the rules of contract construction to resolve the ambiguity." *Id.* (quoting *CareAmerica*, 494 S.E.2d at 722). "Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved" by the factfinder. *Id.* (quoting *CareAmerica*, 494 S.E.2d at 722).

The critical issue presented by Stellar's motion is whether Stellar may recover all its fees despite only prevailing on some

---

*Mut. Ins. Co. v. Gaster*, 546 S.E.2d 30, 31 (Ga. Ct. App. 2001))). Therefore, because Cleveland identified no material differences between federal common law and state law, the Court applies the better-developed Georgia law regarding enforceability of contractual attorneys' fees provisions.

4

of its claims. Here, the Subcontract provision regarding attorneys' fees states as follows: "Upon any default, [Cleveland] shall pay to [Stellar] its attorneys' fees and court costs incurred in enforcing this Subcontract or seeking any remedies hereunder." Compl. Ex. A, Subcontract 6, ¶ 7(c), ECF No. 1-2. Thus, the Subcontract permits recovery of two types of fees: (1) those incurred in "enforcing" the Subcontract; and (2) those incurred while "seeking any remedies" under the Subcontract. But the Subcontract also places a condition precedent on the recovery of fees: there must be a "default." What is unclear is the connection between this condition precedent and what is recoverable. The Court concludes the provision is ambiguous on this point. Thus, the interpretive issue is whether there is a relationship between the condition precedent and the recoverable fees or whether the provision permits Stellar to recover all its fees simply upon establishing *any* default, regardless of whether the fees are related to that particular default.

Under the latter interpretation and in the circumstances presented here, Stellar could recover fees for claims it lost, regardless of whether the claims were even viable. As long as a default occurs and Stellar seeks to either enforce the Subcontract or pursue remedies, its fees are guaranteed. But under the former interpretation, Stellar must show some causal connection between the default, the enforcement of the Subcontract (or the remedies

5

sought), and the fees.  Under this interpretation, the provision thus authorizes the recovery of attorneys' fees incurred for enforcement of the Subcontract and/or for seeking remedies under the Subcontract related to a default on the Subcontract.  Under the enforcement prong, Stellar would be expected to show that the fees it incurred related to the successful pursuit of a claim for default.  Similarly, under the remedies prong, Stellar would only be entitled to fees incurred in the actual obtaining of a remedy for Cleveland's default.  The Court finds that this interpretation reveals the parties' intention in light of the entire text.  *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167-69 (2012) (describing application of the "whole text" interpretive canon).  To hold otherwise would authorize a party to recover fees for not only losing claims but even for frivolous ones.  The applicable language in the Subcontract does not support such an absurd interpretation, particularly when the entire sentence is read in context.[2]

Based on the foregoing, the Court finds that Stellar is entitled to attorneys' fees that it can demonstrate arise from its successful enforcement of the Subcontract and/or successful pursuit of remedies for a default.  The Court further finds that

---

[2] This possibility is not merely hypothetical.  Stellar does indeed seek fees incurred in pursuit of a claim the Court dismissed at summary judgment.

6

although the jury did not make specific findings in its verdict on these issues, Stellar's claim is not doomed. Stellar must simply reconstruct its fee claim by showing that fees were incurred in the pursuit of claims upon which it prevailed. One way to make this showing given the general verdict would be to establish that the verdict is consistent with its fee claim. Stellar has not undertaken this approach, and therefore, its present fee claim is deficient. But the Court finds that it should be given an opportunity to amend its fee motion to attempt to establish its claim under the Court's interpretation of the Subcontract. Accordingly, within 21 days of today's Order, Stellar shall file an amended motion for fees. Cleveland shall have 14 days to respond, and Stellar shall have 7 days to reply.[3]

**II. Cleveland's Motion for Attorneys' Fees (ECF No. 177)**

Cleveland also filed a motion for attorneys' fees. Cleveland urges the Court to employ its "inherent powers" to assess fees based on Stellar's bad faith. *See Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985) (explaining that courts have inherent power to assess attorneys' fees when losing party acted in bad faith). As evidence of bad faith, Cleveland points to inconsistent positions taken by Stellar regarding the extent to which various subcontractors were responsible for project delays.

---

[3] For the same reasons, Stellar's bill of costs (ECF No. 199) is deficient. To the extent Stellar seeks costs under the Subcontract, Stellar must likewise reconstruct its cost claim.

7

Cleveland thus argues that Stellar has attempted to "double-dip" on recovery from delays to the project.

The Court concludes that the evidence at trial and throughout this litigation does not demonstrate bad faith by Stellar. Stellar presented sufficient evidence at trial to permit the jury to conclude that Cleveland's shoddy work and insufficient manpower caused substantial delay to the project. Further, Stellar's scheduling expert offered an enlightening explanation of "critical path delay," analogizing the construction project in this case to a Thanksgiving dinner. Stellar's expert employed this analogy to demonstrate how Stellar's assessment of delay responsibility could change over time. And despite thorough cross examination of Stellar's expert and Stellar's vice president in charge of the project regarding these allegedly inconsistent positions, the jury still awarded Stellar $1,300,000 in damages. The Court therefore declines to exercise its inherent powers to award sanctions for bad faith, and Cleveland's request for fees is denied.

**III. Cleveland's Motion to Alter the Judgment (ECF No. 197)**

Cleveland moved to add pre-judgment interest to the judgment pursuant to either its Miller Act claim or its breach of contract claims. As noted above, however, the jury found that Liberty was not jointly liable for any of Cleveland's damages. And because a surety and principal are jointly liable on a Miller Act claim, the jury could not have found for Cleveland on its Miller Act claim.

8

Accordingly, prejudgment interest pursuant to that claim is improper. Stellar, however, does not object to an award of interest pursuant to Cleveland's breach of contract claims. But because the Court may amend the judgment amount after reviewing Stellar's renewed fee petition, the Court declines to add interest to the judgment at this time.

CONCLUSION

As explained above, Stellar's motion for attorneys' fees (ECF No. 167) is denied without prejudice. Cleveland's motion for attorneys' fees (ECF No. 177) is denied. The Court reserves ruling on Cleveland's motion to alter the judgment (ECF No. 197).

IT IS SO ORDERED, this 28th day of January, 2019.

                                                    S/Clay D. Land
                                                    CLAY D. LAND
                                                    CHIEF U.S. DISTRICT COURT JUDGE
                                                    MIDDLE DISTRICT OF GEORGIA